King, J.
This proceeding is to reverse the judgment of the court of common pleas, rendered in favor of Casper Rohner against The Toledo Consolidated Street Railway Co. It is claimed that the verdict and the judgment are not sustained by the evidence, and there is an exception and an allegation of error, based upon the refusal of the court to give two requests proposed by the defendant below, being Nos. 11 and 14, and that the damages are excessive,
As to the giving of these requests: We think the 11th request proposed by the defendaant below is fully and fairly incorporated by the court in its general charge. The 14th request is to the effect — not quoting the language — that the jury are instructed that the testimony of one or more creditable'witnesses, in testifying to the existence of a fact, as that they heard a gong or bell ring, is of more weight, and should be given greater weight by the jury, than the testi *703 mony of a like number of witnesses that they did not hear sounds; in other words, tnat affirmative and positive testi mony is entitled to more weight than that which states that the witness did not see- or did not hear. We can see no particular difficulty with that proposition of law, standing alone. Yet the court quite fully instructed the jury as to their duty in regard to the weighing of the testimony of the different witnesses, and we do not think it was error to refuse to give this particular request, because the failure to ring the bell or sound the gong'does not seem in the case before us to have been the negligence,if any existed", which contributed to cause this injury. It was not the reason of the injury which the plaintiff sustained; and therefore, an-instruction stating that rule, although such instruction was correct, was not pertinent, and a refusal to give it would not be prejudicial to the defendant in this case.
That leaves the only question to be considered, whether the verdict is sustained by the evidence. Upon that question we have examined this record with great care. It is' like most of these cases of negligence; there is testimony tending to prove, or from which a jury might infer negligence on the part of either the plaintiff or the defendant, and there is testimony from which they might have found them not guilty of negligence.
The facts relating to the injury, briefly stated, are these: Plaintiff was coming to his work from the east side of the river on the morning of the 11th of November, 1892, between ’ 6 and 7 o"clock. He had looked for a car, and seeing none, he finally obtained a ride with a man driving a wagon. This wagon was driven by a man named Pox, and was a ■ wagon running-gear without a box, used in hauling lumber. This wagon was coupled together short, with the reach projecting through the rear axletree a distance of about six feet, and across- the two bolsters of the. wagon was a board, which also projected back of the *704 wagon four or five feet. Upon this board the driver and another man sat. The plaintiff overtook it, and jumped on ■behind the rear bolster, with his feet and face- to the north, or down the river, the team going westward.' They drove on Bridge street and approached the Cherry street bridge. The morning was cold. There had been rain or sleet, and the ground was icy, and Fox drove his wagon in the railway track. At a railroad crossing the grade of this street commences to rise towards the Cherry street bridge; and when Fox had passed over that raising ground, perhaps a little more than half way to the bridge, but still on the upgrade, a car belonging to the Consolidated Street Railway -Co. came along upon the same track that he was driving on. Whether there was an alarm given by the motorman does not matter; that question is in dispute. The car came on at a pretty good rate of speed up the grade towards these men and this team and wagon on the track in front of it. The men upon the wagon saw the car, all of them but ■ the plaintiff, when it was 100 feet away, and the driver promptly commenced to turn his team out of the railway track. The evidence seems to indicate that the team passed out of the railway track, and the forward wheels of the wagon entirely out of it, and the right hind wheel and possibly the left entirely out of the track, although I think the weight of the testimony shows that the left wheel was still in the right rail, or on the shoulder of the right rail of the track, and was sliding along it,. At any rate, it did not all of it leave the track so far as to offer a clear way for the car to go past without a collision," and the car came up and struck- the wagon; that much is certain. Where it struck is not clear, but the evidence seems to indicate that the reach was first struck by the right hand corner of the front of the dashboard of the car; and the evidence also seems to indicate that the dash struck the board,because the evidence tends to show that the board was fastened upon the forward bolster *705 by cleats fastened in such a manner that the board would not-' shove forward or backwards, and the rear cleat on the forward bolster was knocked off, as the driver testifies, and the board -. was shoved ahead some little distance. It would thus seem very clear that the car struck the board; and there is some evidence to show that it then struck the wheel. I think quite likely that it did. The result of all this collision ■ was to shove the hind part of the wagon off and away from the car, so that the car could pass. There was also another result - of it. The team started up, and pulled the wagon away, and. the car came to a stop, and very promptly after the collision, within about a half or three-quarters of a oar length. So far as the plaintiff "was concerned, he testifies that the first he - neard of the car was the jar of the car striking the -wagon, and the jolt of the wagon. The result of that was to throw the plaintiff off onto the ground, and he fell down on his left side, and struck his left shoulder against the pavement, but not so as to permanently disable him at the moment. He got up. The point where be was lying and the place from which he arose was near the rear steps of the car after it stopped. There is perhaps a -little confusion in the evidence as to that point; but he lay between the forward and rear wheels of the car. The car probably did not run more than about half its length after it struck the wagon, and was virtually under the control of the motorman when it struck. That is about all the evidence there is on the subject.
It is argued that there is no evidence showing negligence on the part of the railroad company, and that there is evidence showing that the plaintiff was guilty of contributory negligence — that he must exercise due care, use his senses and do everything that a reasonably prudent man would do under similar circumstances to avoid being injured. And so far as the evidence discloses, I do not see but that he did. He was riding on this wagon; he had no particular *706 duty to do With reference to it, except to do what a man of ordinary care would do, riding in the same position that he was riding, simply as a passenger and not having the responsibility of the care of the team. But as to the defendant’s negligence; we think there is some evidence here in this record from which a jury might infer negligence on the part of the railroad company. This wagon was in plain sight of the motorman on the car. He testifies that he saw clearly, and he must have seen it. He came up this grade towards1this bridge at a speed which, from his own story, was so 'rapid that when he saw. that the wagon was not going to get out of the track he could not stop the car in time to avoid a collision. We think it was a fair question to submit to the jury, whether the railroad company through its motorman was not negligent when it could not stop the car under these circumstances in time to avoid a collision with a vehicle in plain sight in front of it. Clearly, although a warning on the part of the railroad company had been given,and the driver of the wagon had noticed the car coming, but paid no attention to it, and remained in the track, the railroad company would have no right to run him down — would have no right to come along with the car and shove him off the track; it must use reasonable care still-to avoid the collision. There is perhaps thisHo bejsaid for the motorman: that he thought the driver was going to get his wagon out of the track; but he did not, owing to the conditions which existed, although he fairly endeavored to drive his team away from it. And with that condition of affairs, it seems to us the jury might say that it was the duty of the motorman to so control his . car that there could not be a collision, even though the wagon did not leave the track as rapidly as it at- first appeared to be doing. The wagon might stick on the track, which is a very common occurrence, and all motormen must-know it. That is.true, even on a dry rail, and especially so on a wet and frosty one. . Where there is evidence of that *707 kind going to the jury, we are not disposed to disturb their verdict.
It is argued very strenuously that this verdict was excessive. This man was 56 years of age, apparently in fair health for a man of that age. He was a mechanic — a furniture polisher by trade, and the most of the time he had been working in Toledo he had been receiving $1.75 per day, although he says he has at different times in his career received very much higher wages. Those were the lowest wages he had ever received, and were the wages he was receiving at the time he was injured in 1892. The verdict of the jury was $2,950. His shoulder was dislocated as the result of the injury, and it never was reduced to its proper position, so that his arm could never be used again, as he naturally would do. The evidence was that he could not raise his hand as high as his shoulder, although he had a fair use of the forearm when the upper arm was dropped at the side or was hanging downward; but he had no use of the arm and hand at a point as high or higher than his shoulder. Clearly that would unfit him for work at his trade; clearly he could not follow that any farther. He was a man apparently in the prime of life, perhaps a little past its meridian, but he was suddenly deprived of his means of livelihood, or of following the trade that he had been accustomed to follow. We cannot say that $2,950 would be too large a sum to pay for that kind of an injury; on the contrary, I should be of the opinion that it was a fair estimate, in view of the circumstances of the case. We think the jury were not actuated by any prejudice or any desire to inflict any punishment in this case; but they seem to have considered all the circumstances, having made a fair estimate of the amount that a man should receive for that kind of an injury, taking also into consideration — as they were entitled to — the amount of pain and suffering that would follow this kind of an injury, and the amount of time that it was necessary to nurse *708 and treat him. All these things should make up and enter into the amount of damages to be given in a case like this.
Smith & Baker, for plaintiff.
James H. Southard, for defendant.
We think that the amount was not excessive.
The verdict and judgment will therefore be affirmed.